# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## ABILENE DIVISION


| | | |
|---|---|---|
| **RONALD GLENN BRECKENRIDGE,** | § | |
| **TDCJ ID # 705189,** | § | |
| **SID No. 1445942,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | **1:08-CV-002-BI** |
| **JANAY B. WILLIAMS, et al.,** | § | **ECF** |
| | § | |
| **Defendants.** | § | |


## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff, a state prisoner proceeding *pro se* and *in forma pauperis*, filed a complaint under

42 U.S.C. § 1983 on January 4, 2008.  By order dated January 16, 2008, this case was transferred

to the docket of United States Magistrate Judge Philip R. Lane for screening pursuant to 28 U.S.C.

§§ 1915 and 1915A.  Plaintiff refused his consent to having the United States Magistrate Judge

conduct all further proceedings in this case under 28 U.S.C. § 636(c) (Doc. 8).  On March 27, 2008,

the court held an evidentiary hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985),

and 28 U.S.C. § 1915.  Plaintiff appeared at the hearing and testified in his own behalf.  Plaintiff

again refused his consent at the *Spears* hearing.

On May 14, 2008, Plaintiff filed a motion asking that his objection to having the United

States Magistrate Judge hear this case be dismissed and consenting to having the Magistrate Judge

conduct all further proceedings in this case (Doc. 15).  On June 3, 2008, the court granted Plaintiff's

motion and further ordered that the docket shall reflect that this constitutes Plaintiff's consent to

having the United States Magistrate conduct all further proceedings in this case (Doc. 17).

Pursuant to 28 U.S.C. § 1915A, the court has conducted a review of Plaintiff's complaint, as supplemented by Plaintiff's *Spears* hearing testimony at the hearing on March 27, 2008.

## I.    BACKGROUND

In his complaint, as supplemented by his exhibits and his testimony, Plaintiff alleges that during all relevant time periods, he was confined to the French Robertson Unit ("Robertson Unit") of the Texas Department of Criminal Justice - Institutional Division ("TDCJ").

1.      Plaintiff arrived at the Robertson Unit on April 27, 2007.  He has been there continuously, except for times that he was treated at the Montford Unit Hospital or at the Hendrick Medical Center.

2.      Plaintiff experiences several chronic and longstanding medical and health problems, including vertigo.  Plaintiff has been issued a hemi-walker for use while ambulating as a result of his vertigo.

3.      On July 26, 2007, Plaintiff was summoned to 1-Building by Janay B. Williams, the Robertson Unit Property Officer.  Plaintiff was in the process of recovering his property after returning to the Robertson Unit from the Montford Unit.

4.      Correctional Officer Harold Mitchell ordered two support services inmates ("SSIs") to assist Plaintiff with the recovery and transport of his property from 1-Building to 3-Building, where Plaintiff is housed.

5.      Officer Williams ordered the two SSI inmates to return to 3-Building.  She told Plaintiff that she had talked with Major Kevin P. Pinney, and the two agreed with her decision to require Plaintiff to transport all of his personal property himself.  Plaintiff had personal contact with Major Pinney at the time that Williams told him that he had to transport his own property.  Williams told Plaintiff that she did not care about his medical problems.

6. Williams told Plaintiff that if he walked out without his property, she would declare such property abandoned. Cary J. Cook was present and heard what Williams said but did not stop her or intervene.

7. Plaintiff left 1-Building with his lightest bag of property. On the way to 1-Building, he stopped and spoke with Major Jimmy S. Smith. Plaintiff told Smith he was unable to carry his property because of his medical condition. Smith said he could do nothing for Plaintiff and walked away.

8. Plaintiff dragged the bag of property through 1-Gate and through A-Turnout, where another inmate grabbed the bag and carried it to 3-Building for Plaintiff. Plaintiff continued to 3-Building, then returned to 1-Building to get another bag of property. Upon returning to 1-Building, Plaintiff complained to Williams, who said that she "did not care" if Plaintiff was hurting.

9. Plaintiff then left 1-Building to return to 3-Building, carrying another bag of property. Outside of 1-Building and next to the Unit mailroom, Plaintiff fell to the ground. Officers Shirley Hutto, Madigan, and Lieutenant Charles S. Hendrix helped Plaintiff off the ground. Williams rushed over and told Hutto to stop helping Plaintiff, saying that Plaintiff was to carry his own property "per Major Pinney."

10. Plaintiff continued carrying his bag towards 1-Gate. He told Hendrix he was hurting too much to continue. Plaintiff asked Hendrix to call Warden Eason about the situation. Hendrix told Plaintiff he could submit his complaint to the warden through a written I-60 request. After Plaintiff continued to complain, Hendrix told him to make it to the gym and then he would see what could be done for Plaintiff.

11. Plaintiff again fell to the ground, and inmates attempted to assist him. Officer Soto ordered the inmates to get away from Plaintiff. Hendrix rushed to the telephone and called for emergency medical treatment. Plaintiff was placed on a stretcher, transported to the infirmary

emergency department, and then transferred to the Hendrick Medical Center emergency department by ambulance. Plaintiff experienced severe pain and was treated as an in-patient for four days.

12.     During the relevant period, Plaintiff had several work restrictions, including a restriction on lifting more than 25 pounds. On August 1, 2007, Plaintiff's restrictions were changed to include a restriction on lifting more than 10 pounds.

13.     Upon his return to the Robertson Unit, Plaintiff's personal property was returned with the assistance of other inmates. Williams told Plaintiff, "I guess you and your entourage get to move your property."

14.     On August 2, 2007, Warden Eason apologized to Plaintiff for the incident.

15.     Plaintiff submitted a Step 1 grievance on or about August 8, 2007. He did not receive a response and submitted a Step 2 grievance approximately 45 days after he submitted the Step 1. Warden Eason told him to contact the Central Grievance Office ("CGO") to determine the status of his grievances. He sent his only copies of the Step 1 and Step 2 grievances to the CGO on December 5, 2007. He submitted I-60 requests to Bonnie Young, the unit grievance officer, who indicated that there was no record of his Step 1 grievance and that Step 2 grievances are not within her control. Officials, including the CGO, have not responded to his letters and I-60s asking about the status of his grievances.

16.     Plaintiff claims that the Defendants subjected him to cruel and unusual punishment in the form of deliberate indifference to his health and safety and by failing to protect him from a substantial risk of serious harm.

17.     Plaintiff is seeking a declaratory judgment, injunctive relief, and an award of compensatory and punitive damages. He specifically seeks an award that will take care of his needs and medical for the rest of his life.

## II.    ANALYSIS

In both proceedings *in forma pauperis* and civil actions brought by a prisoner against a governmental entity, officer, or employee, the court is required under 28 U.S.C. §§ 1915-1915A to dismiss the complaint or any portion of the complaint if the complaint is frivolous or malicious or fails to state a claim on which relief may be granted.  These provisions thus apply to this prisoner civil rights action.  *Harris v. Hegmann,* 198 F.3d 153, 156 (5th Cir. 1999).  A "complaint may be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) if it has no arguable basis in law or in fact." *Ruiz v. United States*, 160 F.3d 273, 274-75 (5th Cir. 1998).  Under *Ruiz*, "[a]s part of the screening process of prisoner complaints under § 1915A, a trial court is directed to "dismiss the complaint, or any portion of the complaint, if the complaint – (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted . . ." *Id*.  A claim has no arguable basis in law or fact if it is based on an indisputably meritless legal theory or if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless. *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).  The court is authorized *sua sponte* to test whether the proceeding is frivolous or malicious even before the service of process or before an answer is required to be filed.  *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990); *see also* 42 U.S.C. § 1997e(c)(1).  A questionnaire or evidentiary hearing may be used to assist the court in determining whether the case should be dismissed under these provisions. *See Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976) (use of questionnaire to develop the factual basis of the plaintiff's complaint); *Spears,* 766 F.2d 179 (use of an evidentiary hearing).

The court has reviewed Plaintiff's arguments and assertions in his complaint and his testimony at the *Spears* hearing to determine whether Plaintiff's claims present grounds for dismissal or present cognizable claims which require the Defendants to answer and the case to proceed.

**A.      Exhaustion of Administrative Remedies**

As an initial matter, the court notes that Plaintiff testified that he timely submitted both Step 1 and Step 2 grievances about the July 26, 2007, incident.  Plaintiff has testified that these grievances may have been lost by TDCJ offcials and that he provided his only copies of these grievances to the CGO.  He testified that TDCJ officials, in particular both Robertson Unit officials and CGO officials, have failed to respond to his requests, by letter and I-60, to inform him of the status of these grievances.

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of [Title 42 of the United States Code], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a).  That provision plainly requires that administrative remedies be exhausted before the filing of a § 1983 suit, rather than while the action is pending.  *Wendell v. Asher*, 162 F.3d 887, 890 (5th Cir. 1998).  A prisoner must exhaust prison grievance remedies before he can pursue a civil rights claim pursuant to 42 U.S.C. § 1983. *Porter v. Nussle,* 534 U.S. 516, 524 (2002) ("The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."); *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir. 2001) (The PLRA requires a prisoner "to exhaust 'available' 'remedies,' whatever they may be"; the "failure to do so prevents him from pursuing a federal lawsuit at this time.").  Under the present version of § 1997e, the court is not required to determine whether a prisoner "has reasonably and in good-faith pursued his administrative remedies." *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003) (quoting *Underwood v. Wilson*, 151 F.3d 292, 294 (5th Cir. 1998)).  Since the amendment of § 1997e, the

court has taken a strict approach to the exhaustion requirement. *Days*, 322 F.3d at 866. Exhaustion is mandatory "irrespective of the forms of relief sought and offered through administrative avenues." *Booth*, 532 U.S. at 741 n.6. A prisoner must "pursue the grievance to a conclusion." *Wright,* 260 F.3d at 358. "Quibbles about the nature of a prisoner's complaint, the type of remedy sought, and the sufficiency or breadth of prison grievance procedures were laid to rest in *Booth*." *Id.* A prisoner must exhaust his administrative remedies by complying with applicable prison grievance procedures before filing a suit related to prison conditions. *See Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). Furthermore, as the Supreme Court has recently held, the PLRA mandates that prisoners "properly" exhaust their claims by complying with the facility's administrative rules and procedures. *Woodford v. Ngo*, 126 S. Ct. 2378, 2382, 2387, 165 L. Ed. 2d 368 (2006). If a prisoner fails to exhaust his administrative remedies prior to filing suit, the district court must dismiss the prisoner's civil rights claims. *See Jones v. Bock*, 549 U.S. 199,127 S. Ct. 910, 923 (2007) (noting that "no unexhausted claim may be considered"). The court is not required to determine whether Plaintiff has reasonably and in good faith pursued his administrative remedies. *Days*, 322 F.3d at 866 (citing *Underwood,* 151 F.3d at 294). Although the Fifth Circuit has taken a "strict approach" to the exhaustion requirement, it "'may be subject to certain defenses such as waiver, estoppel, or equitable tolling.'" *Id.* (quoting *Wendell*, 162 F.3d at 890).

In *Woodford* the Supreme Court explained, "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." 126 S.Ct. at 2386. In *Days* the Fifth Circuit defined available remedies as those "'immediately utilizable' and 'that [are] accessible or may be obtained: personally obtainable.'" 322 F.3d at 867 (quoting Webster's New Int'l Dictionary, 150 (3rd ed. 1981)).

Plaintiff is incarcerated in TDCJ, which has a formal two-step administrative grievance process. "The Texas Department of Criminal Justice currently provides a two-step procedure for presenting administrative grievances." *See Wendell*, 162 F.3d at 891. In Step 1 the prisoner submits a grievance at the institutional level. *Id*. Prisoners are allowed fifteen calender days after an incident to file a Step 1 grievance. *Id*. The response to the Step 1 grievance is due within forty days after receipt of the grievance. *Id.* If the decision at Step1 is unfavorable, the prisoner then has ten days after the decision to submit a Step 2 appeal. *Id*. The final decision maker for Step 2 issues a decision after the departmental grievance investigator prepares a recommendation. *Id.* The response to the Step 2 grievance is due within forty days after receipt of the prisoner's appeal. *Id*. The TDCJ Inmate Grievance System provides that, if an inmate does not receive a written decision within 180 days after the grievance is filed, he may proceed with his other state or federal court remedies. Tex. Gov't Code § 501.008(d)(2). The grievance procedure takes approximately 90 days to exhaust. *Id*. It is settled that a TDCJ inmate must complete both steps of the grievance process for his claim to be considered exhausted. *See Johnson*, 385 F.3d at 515 (citing *Wright*, 260 F.3d at 358).

The court has accepted Plaintiff's testimony regarding his submission of Step 1 and Step 2 grievances in reviewing his claims upon initial review.

**B.     Deliberate Indifference to Health and Safety and Failure to Protect**

Plaintiff alleges that the Defendants subjected him to cruel and unusual punishment because they  were deliberately indifferent to his health and safety and failed to protect him from a substantial risk of serious harm. He alleges that each of the Defendants knew of his medical condition and knew that he required the use of a hemi-walker to ambulate but nevertheless either ordered him to personally transport his property from 1-Building to his assigned housing in 3-Building, prevented other inmates or officials from helping him, or failed to intervene by stopping Williams or calling Warden Eason to notify him of the situation.

In order to state a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).

It is recognized that "prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987). The protections afforded prisoners specifically include the Eighth Amendment's prohibition against cruel and unusual punishment. *See Whitley v. Albers*, 475 U.S. 312, 318, (1986). Punishment rises to the level of cruel and unusual only where it involves an "'unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 104(1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).

"The Constitution 'does not mandate comfortable prisons' . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989) (internal citation omitted). The Eighth Amendment's prohibition against cruel and unusual punishment imposes minimum requirements on prison officials in the treatment received by and facilities available to prisoners. *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995). However, the Eighth Amendment does not afford protection against mere discomfort or inconvenience. *Id.*

The Supreme Court has defined the Eighth Amendment standard as containing both subjective and objective components. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). The subjective component requires proof that the officials acted with subjective deliberate indifference, while the objective component requires proof that the deprivation was sufficiently serious. *Id.* Assuming the objective requirement is met, a prison official may violate the Eighth Amendment if he is deliberately indifferent to an inmate's health or safety. In this context, to be deliberately

indifferent, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003). In other words, the prison official must be subjectively aware of a substantial risk of serious harm to the inmate and fail to protect the inmate from that harm. *Farmer*, 511 U.S. at 839-40. Thus, the "'failure to alleviate a significant risk that [the official] should have perceived, but did not,' is insufficient to show deliberate indifference." *Domino v. Texas Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Farmer,* 511 U.S. at 838).

"To violate the Cruel and Unusual Punishment Clause, a prison official must have a 'sufficiently culpable state of mind.'" *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999) (quoting *Farmer*, 511 U.S. at 834). The "applicable *mens rea* of deliberate indifference demands subjective knowledge of a substantial health risk." *Gobert v. Caldwell*, 463 F.3d 339, 348 (5th Cir. 2006). Thus, "[t]he deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the [ ] officials were actually aware of the risk, yet consciously disregarded it." *Lawson v. Dallas County,* 286 F.3d 257, 262 (5th Cir. 2002). A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious bodily harm and he disregards that risk by failing to take reasonable measures to abate it." *Gobert*, 463 F.3d at 346 (citing *Farmer*, 511 U.S. at 847); *Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994)). Prison officials must "know of and disregard [the] excessive risk to inmate health or safety." *Hall*, 190 F.3d at 697 (citations and brackets omitted). "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants." *Id.* (quoting *Farmer*, 511 U.S. at 834).

"To prevail on a section 1983 failure to protect claim, a prisoner must demonstrate that 'he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.'" *Jones v. Greninger,* 188 F.3d 322, 326

(5th Cir. 1999) (quoting *Newton v. Black,* 133 F.3d 301, 308 (5th Cir. 1998)). Recognizing a duty

on the part of prison officials to protect prisoners from harming each other, the Supreme Court

explained that the "deliberate indifference" standard in this context is subjective, not objective.

*Farmer,* 511 U.S. at 832-34. However, a jury in a failure to protect case can infer that an official

actually knew of the risk based on the same type of circumstantial evidence that is used to prove

objective deliberate indifference in other Eighth Amendment claims. *Id.* at 843 n.8; *see Hope v.*

*Pelzer*, 536 U.S. 730, 738 (2002) (In failure to protect claims, a plaintiff may rely on circumstantial

evidence to show that because the risk was obvious, the official must have known of the risk).

The deliberate indifference requirement is more than mere negligence. *Gibbs v. Grimmette*,

254 F.3d 545, 549 (5th Cir. 2001). Mere negligence or neglect does not constitute deliberate

indifference. *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979).

Moreover, in order to state a cause of action under section 1983, the plaintiff must identify

defendants who were either personally involved in a constitutional violation or whose acts were

causally connected to the constitutional violation alleged. *Woods*, 51 F.3d at 583. Personal

involvement is an essential element of a civil rights cause of action. *Thompson v. Steele*, 709 F. 2d

381, 382 (5th Cir. 1983). Prison officials "cannot be automatically held liable for the errors of their

subordinates." *Adames*, 331 F.3d at 513. Supervisory officials may be held liable only if: "(i) they

affirmatively participate in the acts that cause constitutional deprivations; or (ii) [they] implement

unconstitutional policies that causally result in plaintiff's injury." *Mouille v. City of Live Oak, Tex.,*

977 F.2d 924, 929 (5th Cir. 1992). Vicarious liability does not apply to § 1983 claims. *Pierce v.*

*Tex. Dep't of Crim. Justice, Institutional Div.,* 37 F. 2d 1146, 1150 (5th Cir. 1994).

Plaintiff alleges that he made each of the Defendants aware of his medical problems and his

inability to carry and transport his property while ambulating with his hemi-walker. He alleges that

he had personal contact with each of the Defendants. He alleges that the risk to him was obvious,

but each of the Defendants was deliberately indifferent to the substantial risk of serious harm, placed him at a risk of serious harm, and failed to take action to protect him, despite being aware of his medical problems, his inability to carry his property while ambulating with his hemi-walker, and the risk of harm inherent to transporting his personal property without assistance.

The court has considered Plaintiff's allegations in his complaint, as supplemented by his testimony. The court is unable to find that Plaintiff's claims are frivolous and, therefore, finds that Plaintiff has stated a constitutional violation sufficient to require an answer or other responsive pleading by Defendants Williams, Smith, Pinney, and Hendrix.

However, Plaintiff's allegations fail to demonstrate any personal involvement of Defendant Cook in his claims. He alleges that Cook heard what Williams said, but left. His allegations fail to demonstrate that Cook was aware of a substantial risk of serious harm or that Cook was deliberately indifferent to such risk. Therefore, the claims against Cook should be **DISMISSED WITH PREJUDICE AS FRIVOLOUS** because Plaintiff has not shown Cook's personal involvement in the alleged constitutional deprivations.

Plaintiff also testified that he is suing each of the Defendants in his or her official and individual capacities. The Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983. *Aguilar v. Tex. Dep't of Crim. Justice, Institutional Div.*, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing *Farias v. Bexar County Bd. of Trustees for Mental Health Mental Retardation Servs.*, 925 F.2d 866, 875 n.9 (5th Cir. 1991)). A state's sovereign immunity is not waived for claims pursuant to §1983. *Id.* (citing *Quern v. Jordan*, 440 U.S. 332, 338 n.7 (1979)). Moreover, the State of Texas has not consented to this suit. *Id.* (citing *Emory v. Tex. State Bd. of Med. Exam'rs*, 748 F.2d 1023, 1025 (5th Cir. 1984)). As an instrumentality of the state, the TDCJ-ID is immune from a suit for money damages under the Eleventh Amendment. *Talib*, 138 F.3d at 213. Federal claims against state employees in their official capacities are the equivalent of suits against

the state. *Ganther v. Ingle*, 75 F.3d 207, 209 (5th Cir. 1996). The Eleventh Amendment immunity thus extends to TDCJ officers acting in their official capacity. *Aguilar*, 160 F.3d at 1054.

In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court carved out an exception to Eleventh Amendment immunity noting that a state cannot confer authority on its officers to violate the Constitution or federal law. *See Aguilar*, 160 F.3d at1054. However, under this exception an individual official may be liable only for implementing a policy that is "itself [ ] a repudiation of constitutional rights" and "the moving force of the constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (citing *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir. 1985)). Plaintiff's allegations fail to demonstrate any such policy and fail to demonstrate a constitutional violation. Thus, Plaintiff has failed to state a cognizable constitutional claim against any Defendant in the Defendant's official capacity. Therefore, all claims asserted against each of the Defendants in his or her official capacity should be **DISMISSED WITH PREJUDICE AS FRIVOLOUS.**

## C.    Motion for Preliminary Injunction

Plaintiff filed a motion for preliminary injunction on March 27, 2008 (Doc. 12). The court has already addressed Plaintiff's motion for appointment of counsel, which is contained in the same document by order entered on March 28, 2008 (Doc. 13).

Plaintiff alleges that he is subject to being placed on a "medical chain" for treatment at the Montford Unit or transfer to another unit. Plaintiff testified that he is permanently assigned to the infirmary. He indicated that because he is so assigned, he has indirect access to the law library, rather that direct access and, thus, does not have the assistance of legal clerks in prosecuting this civil case. Plaintiff is seeking an injunction requiring Robertson Unit officials to provide him with "unfettered, direct access to the law library," all of the books, and all offenders, despite any rules or policies prohibiting such access.

In order to secure a temporary restraining order or preliminary injunction, the moving party must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat that movant will suffer irreparable injury if the restraining order is not issued; (3) that the threatened injury to the movant outweighs any damage the restraining order might cause to the opponent; and (4) that the restraining order will not be adverse to the public interest. *See Southerland v. Thigpen,* 784 F.2d 713, 715 (5th Cir. 1986). The party seeking a restraining order or injunction must prove all four elements, and failure to prove any one of them will result in denial of the motion. *See Enterprise Intern, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985). "An injunction is an extraordinary remedy and should not issue except upon a clear showing of possible irreparable injury." *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976).

The court has reviewed the facts alleged in Plaintiff's motion, his complaint, and his testimony at the *Spears* hearing. The court finds that these allegations fail to demonstrate a substantial likelihood of success on the merits or a substantial threat that the movant will suffer irreparable injury if the restraining order is not issued. The court notes that Plaintiff has very ably represented himself and his interests thus far. Therefore, Plaintiff's motion for preliminary injunction filed on March 27, 2008 (Doc. 12), should be **DENIED**.

D.    **Motion for Intervention**

Harvey Leroy Sossamon, III, has filed a motion to intervene in this action. Sossamon argues that he has an interest that is related to the transaction that forms the basis of this case because "the disposition of this case may impede or impair" his right to be free from cruel and unusual punishment, in that he is subject to the prison practice at issue in this case. He further argues that he should be allowed to intervene so that he can provide Plaintiff with legal assistance.

Pursuant to Rule 24(a)(2), a movant may intervene as of right when: (1) the motion to intervene is timely; (2) the movant has an interest related to the transaction that forms the basis of

the controversy in the case; (3) the disposition of the case has the potential to impair or impede the movant's ability to protect his interest; and (4) the existing parties do not adequately represent the movant's interest. Fed. R. Civ. P. 24(a)(2). In the absence of any of these elements, intervention as of right must be denied. *United States v. Franklin Parish Sch. Bd.*, 47 F.3d 755, 758 (5th Cir. 1995).

The interest required to intervene as of right is a "direct" interest. *Ross v. Marshall*, 456 F.3d 442, 443 (5th Cir. 2006). Although the failure to satisfy any one element precludes the applicant's right to intervene, the Fifth Circuit has noted that the "inquiry under subsection (a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application." *Ross v. Marshall*, 426 F.3d 745, 753 (5th Cir. 2005) (citing *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996). As such, "intervention of right must be measured by a practical rather than technical yardstick." *Id*.

The court notes that Sossamon has litigated on his behalf, specifically challenging the policy of requiring an inmate to transport his own personal property, and that his case concluded after a jury trial. Sossamon's allegations fail to demonstrate that he has a direct interest in the incident which forms the basis of Plaintiff's claims. Moreover, the disposition of Plaintiff's case did not have the potential to impair the abilities of the proposed intervener to protect his particular interest. Sossamon has already brought his own claims before the court. Therefore, Sossamon's request for intervention as of right should be denied.

Rule 24(b) provides for permissive intervention when: (1) the motion is timely; (2) a statute of the United States confers a conditional right to intervene; or (3) the movants' "claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. p. 24(b). The court's Rule 24(b) determination is "wholly discretionary." *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987)). As such, "even [where] there is a common question of law or

fact, or the requirements of Rule 24(b) are otherwise satisfied . . . a district court may deny permissive intervention if such would unduly delay or prejudice the adjudication of the rights of the original parties." *Id*. at 1289 n.2. The court finds that there is no common question of law or fact and that permissive joinder is not appropriate.

Sossamon argues that he should be permitted to intervene so that he can provide Plaintiff with legal assistance. Sossamon notes that inmates are permitted under TDCJ policy to provide assistance to each other. He argues that he should be permitted to intervene so that he can "bring to bear his previous experience at pro se litigation." The court notes that Sossamon has no constitutional right to provide legal assistance to other inmates. *See Shaw v. Murphy*, 532 U.S. 223, 228 (2001). His desire to provide Plaintiff with legal assistance does not provide the basis for intervention, nor does his indication that he is a witness who may potentially testify.

Having carefully considered the arguments set forth in Sossamon's motion for intervention filed May 15, 2008 (Doc. 16), based either upon permissive intervention or intervention as of right, the court finds that such motion should be **DENIED**.

## E.     Motion for Federal Hearing Regarding State Exhaustion

Plaintiff filed a Motion for Federal Hearing Regarding State Exhaustion on June 3, 2008 (Doc. 18), in which he requests that the court allow him to secure affidavits from other offenders who have also had their grievances "lost, destroyed, or misplaced but not returned." However, Plaintiff testified extensively regarding exhaustion at the *Spears* hearing, and this court addressed the issue of exhaustion in this opinion above. Therefore, the court finds that Plaintiff's Motion for Federal Hearing Regarding State Exhaustion filed June 3, 2008, should be **DENIED**.

## IV.     CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law,

**IT IS, THEREFORE, ORDERED that:**

1.      Plaintiff's constitutional claims for deliberate indifference to his health and safety and failure to protect as asserted against Cary J. Cook **ARE DISMISSED WITH PREJUDICE AS FRIVOLOUS**.

2.      Plaintiff's claims asserted against the named Defendants in their official capacities **ARE DISMISSED WITH PREJUDICE AS FRIVOLOUS**.

3.      Defendants Janay B. Williams, Jimmy L. Smith, Kevin P. Pinney, and Charles S. Hendrix shall answer or otherwise plead to Plaintiff's claims that he was subjected to cruel and unusual punishment in the form of deliberate indifference to his health and safety and failure to protect him from a substantial risk of serious harm.  Defendants Williams, Smith, Pinney, and Hendrix shall file written answers or other responsive pleadings to Plaintiff's claim as provided above within *60 days* from the date of receipt of this order.  The clerk shall mail a copy of this order and a copy of Plaintiff's complaint (Doc. 1) to Docketing, Law Enforcement Division, P.O. Box 12548, Capitol Station, Austin, Texas 78711, by *certified mail, return receipt requested*.

4.      Plaintiff's motion for preliminary injunction filed on March 27, 2008 (Doc. 12), is **DENIED**.

5.      Sossamon's motion for intervention filed May 15, 2008 (Doc. 16), is **DENIED**.

6.      Plaintiff's Motion for Federal Hearing Regarding State Exhaustion filed June 3, 2008 (Doc. 18), is **DENIED**

*No further motions or pleadings may be filed by Plaintiff until after the remaining Defendants have answered and the court has entered its scheduling order.*

*All discovery is stayed until further order*.

Any other pending motions are **DENIED**.

**SO ORDERED.**

A copy of this order shall be sent by first class mail to all parties appearing *pro se* and to the institution where Plaintiff is incarcerated. Any attorney of record shall be notified by first class mail or electronically.

DATED this 6th day of October, 2008.

PHILIP R. LANE
UNITED STATES MAGISTRATE JUDGE